LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. On September 15, 2008, Emory Hobbs Hutchison Jr. filed a complaint for divorce in the Lowndes County Chancery Court. Emory sought a divorce from his wife, Rutchel Clarín Hutchison, on the grounds of habitual cruel and inhuman treatment, adultery, and in the alternative, irreconcilable differences. Rutchel filed an answer and cross-complaint alleging habitual cruel and inhuman treatment, adultery, and in the alternative, irreconcilable differences. On November 5, 2008, the chancellor entered an order awarding temporary custody of the couple’s two minor children to Emory.
 

 ¶ 2. Emory and Rutchel ultimately withdrew their fault grounds for divorce. After a two-day hearing, the chancellor granted an irreconcilable-differences divorce. The chancellor awarded the parties joint legal custody of the minor children, with Rutchel to have physical custody and Emory to have reasonable visitation. The chancellor also divided the marital proper
 
 *48
 
 ty and determined child support, but denied Emory any alimony.
 

 ¶ 3. Emory now appeals, asserting that the chancellor erred in awarding custody of the minor children to Rutchel.
 

 FACTS
 

 ¶ 4. Emory and Rutchel were married in 1999. They had two sons, one born in 2000 and the other born in 2003. While on active duty in the United States Armed Forces, Emory suffered a back injury for which he initially underwent surgery in 2001. Emory has been effectively disabled since then and receives compensation from both the Social Security Administration (SSA), effective June 11, 2001, and the Department of Veteran Affairs (VA), effective August 22, 2001. The two minor children receive a total of $514 in social-security benefits due to Emory’s disability.
 

 ¶ 5. Rutchel worked for the Army and Air Force Exchange Service (AAFES). Emory has been unemployed since 2001. Due to Emory’s service in the military and Rutchel’s employment with AAFES, the parties moved several times before buying a house in Columbus, Mississippi, in April 2006. Following their move to Mississippi, Rutchel’s mother moved from the Philippines to live with them and help raise the two minor children. According to Rutchel, the couple decided Rutchel should work in Iraq for a year at a significantly higher pay rate in order to pay off approximately $60,000 in credit-card debt. Rutchel worked in Iraq from October 2007 through late 2008. Rutchel sent home approximately $58,000, some of which Emory used to pay the couple’s credit-card debt. However, Rutchel testified that when she came home from Iraq, the couple’s credit-card debt had increased due to Emory’s spending habits. At the time of the trial, Rut-chel lived in Georgia and was still working for AAFES. Emory was living in the marital home in Columbus. Other facts pertinent to the issue on appeal will be discussed as necessary.
 

 STANDARD OF REVIEW
 

 ¶ 6. The standard of review in child-custody cases is quite limited, and in order to reverse the chancellor’s findings, the chancellor must be manifestly wrong, clearly erroneous, or have applied an erroneous legal standard.
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 586 (¶ 7) (Miss.2002).
 

 DISCUSSION
 

 ¶ 7. In his only issue on appeal, Emory argues that the chancellor erred in awarding custody of the two minor children to Rutchel. It is well settled that in child-custody cases, the polestar consideration is the best interest of the child.
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). The factors used to determine what is in the best interest of a child with regard to custody are: (1) the age, health, and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6). the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 

 ¶ 8. In determining whether the chancellor abused his discretion in applying the
 
 Albright
 
 factors, the appellate court “re
 
 *49
 
 view[s] the evidence and testimony presented at trial under each factor to ensure [the chancellor’s] ruling was supported by record.”
 
 Hollon v. Hollon,
 
 784 So.2d 943, 947 (¶ 13) (Miss.2001). The chancellor found three factors to be neutral, four factors favored Rutchel, three factors favored Emory, and one factor only slightly favored Emory. Emory does not challenge the chancellor’s findings in regard to every
 
 Albright
 
 factor. Rather, Emory specifically contends that the chancellor abused his discretion in determining the amount of care Rutchel’s mother provided the children and in overstating the severity of his disability.
 

 ¶ 9. Emory first argues that the chancellor ignored the testimony of his first cousin, Charlton Lester. Lester testified that he was around the family on a weekly basis from the summer of 2001 through February 2002. According to Lester, during this period Emory’s disability did not affect his ability to take care of his oldest child. However, Emory filled out a form used in his military disability claim in which he described his physical condition at the time. Emory described his pain as constant and that his contributions to child care were limited. Emory stated that: he could not stand or sit too long; he loses his balance easily; he could not bathe or dress himself; he could not contribute to housework; and he was on approximately ten different medications to manage his condition.
 

 ¶ 10. Lester did not see the family regularly again until he moved in Emory’s home in September 2008 to live with Emory and the two children. Lester testified that Rutchel’s mother, who was still living with Emory and the children, did not take care of the children. Lester also testified that Emory handled everything involving the children and everything involving housework and yard work. Lester did admit that his schedule was different from Rutchel’s mother, and he was not always awake when she was at the house.
 

 ¶ 11. In July 2007, Emory completed a continuing-disability-review report for the SSA in which he stated that his health was deteriorating and that he was forced to remain in bed most of the day. Emory admitted that while Rutchel was working, her mother did all the cooking and housework. Emory admitted that the conditions he described in the 2001 and 2007 forms were still the same conditions he was experiencing at the time of trial.
 

 ¶ 12. Rutchel testified that she asked her mother to come live with them because she was unable to care for a disabled husband, raise two children, work full time, and keep up the housework by herself. Emory’s own filings with the SSA and VA reveal that Rutchel was handling everything by herself. Rutchel testified that her mother assumed approximately eighty percent of the housework, including laundry, ironing, cooking, yard work, and helping with the children.
 

 ¶ 13. The chancellor was of the opinion that Rutchel’s mother played a larger role than was represented by Emory. The chancellor also questioned Emory’s credibility in regard to the discrepancies between his trial testimony and the description of his disability in the SSA and VA reports. The chancellor stated that “[either this Court or those agencies do not have a true picture of [Emory’s] physical condition.” We cannot find that the chancellor erred in questioning Emory’s credibility. It is clear from the record that Rutchel’s mother played a role in raising the children and helping around the house, especially when Rutchel was in Iraq.
 

 ¶ 14. Emory also argues that the chancellor erred in overstating the severity of his disability. Emory refers to a disability report by the VA dated May 21,
 
 *50
 
 2009, which was submitted to the chancellor after trial. This report states that Emory’s condition remained unchanged and that his disability rating was the same. Emory contends this report refutes the chancellor’s concern that Emory’s condition would deteriorate as he aged. Although the chancellor was concerned about Emory’s future health, it is clear that Emory’s current health was a big factor in awarding custody of the children to Rut-chel. As previously stated, the chancellor was concerned about Emory’s credibility. The chancellor stated the following: “[Emory] cannot have it both ways, i.e., allege he can adequately care for his children, assuming the necessary physical duties, or being virtually helpless and dependent on his wife or mother-in-law.” Upon review of the record and exhibits, we cannot find that the chancellor erred in awarding custody of the children to Rutchel. This issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.